IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **ANA CAROLINA SERRANO,**<br>    *Plaintiff*, | § § § | |
| v. | § § § | MO:23-CV-00132-DC |
| **CONSUMER FINANCIAL PROTECTION BUREAU, ROHIT CHOPRA, IN OFFICIAL CAPACITY AS DIRECTOR OF THE CONSUMER FINANCIAL PROTECTION BUREAU;**<br>    *Defendants*. | § § § § § § § § § | |

# **ORDER**

Libre, a subsidiary of Nexus Services, Inc., operates a nationwide business targeting immigrants held in custody by U.S. Immigration and Customs Enforcement ("ICE") who are eligible for release but unable to afford bond. After Plaintiff Ana Serrano was detained by ICE in 2020 because she had entered the United States from Honduras, Plaintiff's cousin contacted and signed a contract with Libre, who then secured Plaintiff's release through a third-party bonding company.

The crux of this case, however, is litigation underway many miles away on the East Coast. In 2021, several states and the Consumer Financial Protection Bureau ("CFPB") sued Libre and its parent organization for violating state and federal consumer protection laws. And after Libre repeatedly refused to comply with court-ordered discovery deadlines, a court in the Western District of Virginia found Libre in contempt of court and entered default judgment as a sanction. That court is now considering the appropriate remedies.

Yet according to Plaintiff, if Libre must pay damages in the Virginia lawsuit, Libre won't be able to pay and would need to file bankruptcy. And if Libre files bankruptcy, its third-party bond sureties would likely revoke the bonds issued for Libre's clients—including the one securing Plaintiff's release. And if Plaintiff's bond is revoked, she could be returned to an ICE detention center until her removal hearing scheduled for July 25, 2024.

Plaintiff sued the CFPB and its director, Rohit Chopra, in her official capacity ("Defendants"), moving for an ex parte temporary restraining order ("TRO") and requesting the Court issue a temporary injunction.[1] In sum, Plaintiff requested that this Court issue an order effectively halting the CFPB's operations and enjoin the CFPB from participating in the Virginia lawsuit.

This Court denied in part Plaintiff's motion for failing to satisfy the requirements for the issuance of an ex parte TRO under Rule 65 of the Federal Rules of Civil Procedure but took Plaintiff's request for a temporary injunction under advisement until Defendants had an opportunity to respond.[2] Defendants, having now appeared, move to dismiss Plaintiff's claims, arguing that Plaintiff lacks standing under Article III of the United States Constitution and thus this Court does not have subject matter jurisdiction under Rule 12(b)(1).[3] Likewise, Defendants assert that Plaintiff has failed to state a claim under Rule 12(b)(6).[4] Plaintiff filed a reply to Defendants' response on the preliminary injunction, but

---

[1] Doc. 5.
[2] Doc. 8.
[3] Doc. 22.
[4] *Id.*

did not respond to Defendants' Motion to Dismiss.[5] That said, the Court looks to the merits of Defendants' motion.

## LEGAL STANDARD

### I. Rule 12(b)(1).

Because federal courts are courts of limited jurisdiction, they possess only the power authorized by the Constitution and federal statutes.[6] Motions filed under Federal Rule of Civil Procedure 12(b)(1) allow a party to challenge the trial court's subject matter jurisdiction to hear a case.[7]

Lack of subject matter jurisdiction may be found in any of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[8] "[A]ll uncontroverted allegations in the complaint must be accepted as true."[9] "Thus, unlike a motion to dismiss under [Federal] Rule 12(b)(6), when examining a motion to dismiss for lack of subject matter jurisdiction under [Federal] Rule 12(b)(1), the district court is entitled to consider disputed facts as well as undisputed facts in the record."[10]

---

[5] Under the Local Rules, a failure to respond would allow this Court to grant Defendants' motion as unopposed. W.D. Tex. Loc. R. CV-7(d)(2) ("A response to other motions shall be filed not later than 14 days after the filing of the motion, except as provided by Rule CV-15. If there is no response filed within the time period prescribed by this rule, the court may grant the motion as unopposed.").
[6] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).
[7] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[8] *Id.* (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).
[9] *Taylor v. Dam*, 244 F. Supp. 2d 747, 752 (S.D. Tex. 2003) (citations omitted).
[10] *Id.* (citations omitted).

The burden of proof for a Federal Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.[11] Indeed, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court."[12]

## II. Rule 12(b)(6).

Under Rule 12(b)(6) of Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[13] "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"[14] In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[15]

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16] "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause

---

[11] *Ramming*, 281 F.3d at 161 (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)); *Taylor*, 244 F. Supp. 2d at 752.
[12] *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).
[13] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[14] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[16] *Id.*

of action, supported by mere conclusory statements, do not suffice."[17] A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[18] A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim."[19] But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint.[20] "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'"[21]

## DISCUSSION

To establish standing under Article III, Plaintiff must prove "(i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."[22] A plaintiff may have standing for an injury that hasn't yet happened if the alleged injury is "imminent, not conjectural or hypothetical."[23]

Yet simply alleging some vague or attenuated injury won't suffice. Indeed, the "threatened injury must be certainly impending to constitute injury in fact, and . . .

---

[17] *Id.*
[18] *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).
[19] *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).
[20] *Dorsey,* 540 F.3d at 338.
[21] *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).
[22] TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).
[23] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

[a]llegations of possible future injury are not sufficient."[24] That said, all a plaintiff must do is "allege facts that give rise to a plausible claim of standing."[25] But vague and attenuated potential injuries are all that Plaintiff alleges here.

For example, seven hypothetical steps must occur before Plaintiff's alleged injury can become a reality:

*First*: Libre must have a significant judgment be awarded against it in the Virginia District Court.;

*Second*: Libre cannot obtain a stay of the judgment through Rule 62(b) of the Federal Rules of Civil Procedure or a stay pending appeal;

*Third*: Libre must be unable or refuse to pay the judgment award during the appeal process:

*Fourth*: Libre then files for bankruptcy because it cannot or will not pay the judgment award;

*Fifth*: The unnamed bond surety that contracted with Libre to provide Plaintiff's bond must then try to "revoke" it because of Libre's bankruptcy;

*Sixth*: Plaintiff's bond must then be successfully revoked; and

*Seventh*: Federal immigration authorities would then need to exercise their discretion to arrest and detain Plaintiff because her bond was revoked.

In short, Plaintiff's alleged injury does not even occur until the seventh step of an incredibly attenuated chain of circumstances that rely on other federal courts, the executive branch, and other third parties. Put simply, Plaintiff's Complaint is just the Butterfly Effect

---

[24] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted) (emphasis and alteration in original)

[25] *Barilla v. City of Houston, Texas*, 13 F.4th 427, 431 (5th Cir. 2021) (quoting *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133 (5th Cir. 2009)).

in lawsuit form.[26] In short, Plaintiff has failed to "allege facts that give rise to a plausible claim of standing," and thus lacks standing under to Article III.[27] Accordingly, Defendants' Motion to Dismiss should be granted.[28]

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Dismiss be **GRANTED**. (Doc. 22).

It is also **ORDERED** that Plaintiff's Request for a Temporary Injunction is **DENIED** as **MOOT**. (Doc. 5).

It is so **ORDERED**.

SIGNED this 6th day of January, 2024.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE

---

[26] The Butterfly Effect is a property in chaos theory by which small changes in initial conditions can lead to large-scale and unpredictable variation in the future state of a system.

[27] *Barilla v. City of Houston, Texas*, 13 F.4th 427, 431 (5th Cir. 2021) (quoting *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133 (5th Cir. 2009)).

[28] Because the Court lacks subject matter jurisdiction, the Court need not analyze Defendants' 12(b)(6) motion.